Argued 1 October; decided 15 October, 1900.

## BOYD v. PORTLAND ELECTRIC COMPANY.

[ 62 Pac. 378, 7 Am. Electl. Cas. —.]

37   567
39   485

TRIAL—IMPROPER REMARKS OF COUNSEL—RULING THEREON.

1. To secure a consideration of the alleged misconduct of counsel before the jury there must have been some erroneous ruling of the trial judge in relation thereto; thus, where an attorney was interrupted by his opponent because it was claimed he was making statements not supported by the testimony, and such statements were not set out in the record, and the judge instructed the jury to disregard matters not in evidence, error assigned on such comments will not b considered on appeal, since it was not based on any erroneous judicial action of the trial court: *State* v. *Abrams*, 11 Or. 169, followed; *State* v. *Hatcher*, 29 Or. 309, distinguished.

FALLEN ELECTRIC WIRE*—REASONABLE CARE—QUESTION FOR JURY.

2. In an action for injuries occasioned by a live electric wire which had been blown down in a storm, an instruction that the defendant company could not excuse a delay in replacing such wire on the ground that they did not have a sufficient force to replace it sooner was erroneous, since the question whether the company exercised reasonable care was for the jury.

From Multnomah: ERASMUS D. SHATTUCK, Judge.

This is an action by William Everett Boyd, by R. B. Boyd, his guardian *ad litem*, against the Portland General Electric Co. to recover damages for an injury to

---

*NOTE.—On the question of the liability to persons in public highways for injuries by live wires, see the following list of annotated cases: *Southwestern Tel. Co.* v. *Robinson*, 4 Am. Electl. Cas. 342, 16 L. R. A. 545: *Ahern* v. *Oregon Teleph. Co.* 22 L. R. A. 635, 4 Am. Electl. Cas. 349; *Haynes* v. *Raleigh Gas Co.* 26 L. R. A. 810, 5 Am. Electl. Cas. 264, 41 Am. St. Rep. 786; *Block* v. *Milwaukee St. Ry. Co.* 27 L. R. A. 365, 46 Am. Electl. Cas. 849, 5 Am. Electl. Cas. 293; *Denver Consol. Elec. Co.* v. *Simpson*, 5 Am. Electl. Cas. 278, 31 L. R. A. 566, 25 Am. St. Rep. 242; *City Elec. St. Ry. Co.* v. *Conery*, 31 L. R. A. 570, 54 Am. St. Rep. 262, 6 Am. Electl. Cas. 217; *Western Union Tel. Co.* v. *State to use of Nelson*, 6 Am. Electl. Cas. 210, 31 L. R. A. 572, 51 Am. St. Rep. 464; *Mitchell* v. *Charleston Lt. & Power Co.* 31 L. R. A. 577, 6 Am. Electl. Cas. 245; *Huber* v. *La Crosse City Ry. Co.* 31 L. R. A. 583, 53 Am. St. Rep. 940, 6 Am. Electl. Cas. 285; *McKay* v. *Southern Bell Teleph. Co.* 31 L. R. A. 589, 6 Am. Electl. Cas. 223, 56 Am. St. Rep. 59; *Snyder* v. *Wheeling Electl. Co.* 39 L. R. A. 499, 64 Am. St. Rep. 922; *Mooney* v. *Luzerne Bonough*, 40 L. R. A. 811; *Gannon* v. *Laclede Gas Light Co.* 43 L. R. A. 505; *Electric Ry. Co.* v. *Shelton*, 24 Am. St. Rep. 614, 3 Am. Electl. Cas. 477; *Suburban Elec. Co.* v. *Nugent*, 6 Am. Electl. Cas. 238; *Atlanta Consol. St. Ry. Co.* v. *Owings*, 6 Am. Electl. Cas. 271, 33 L. R. A. 798; *Texarkana Light Co.* v. *Orr*, 5 Am. Electl. Cas. 272, 43 Am. St. Rep. 30; *Western Union Tel. Co.* v. *Thorn*, 5 Am. Electl. Cas. 283; *Kankakee Elec, Ry. Co.* v. *Whittemore*, 4 Am. Electl. Cas. 362; *City of Albany* v. *Watervliet R. R. Co.* 4 Am. Electl Cas. 367; *Graham* v. *City of Boston*, 4 Am. Electl. Cas. 372.

The following cases are based on the alleged negligence of electric companies in maintaining wires in or on buildings or other structures whereby persons not

plaintiff from an electric light wire. The defendant is a corporation, engaged in supplying the City of Portland and its inhabitants with electric light, for which purpose it has erected poles in the streets, with arms near the top bearing the wires which transmit the electricity. During the afternoon and night of December 6, 1897, a violent wind and rain storm, prevailing in Portland and vicinity, prostrated defendant's lines in many places. In Woodlawn, a suburb of the city, about 6 or 7 o'clock in the evening, one of the wires stretched over Magnolia Street parted at a point about one hundred and twenty feet west of Dakota Street, and, crossing over the other wires, hung down in two loops, one of which swung near the ground, about two or three feet west of the pole at the intersection of the streets. About 8 o'clock on the morning of the seventh, plaintiff, who was eleven years of age, and resided with his father on Dakota Street, about two hundred feet south of its junction with Magnolia, was sent on an errand requiring him to pass near the light pole at the corner. A few minutes later he was discovered lying on

servants of such companies were injured by an electric shock while properly about the premises: *Clements* v. *Louisiana Elec. Light Co.* 32 Am. St. Rep. 348, 4 Am. Electl. Cas. 381, 16 L. R. A. 43; *Illingsworth* v. *Boston Elec. Light Co.* 25 L. R. A. 552, 5 Am. Electl. Cas. 312; *Hector* v. *Boston Elec. Light Co.* 5 Am. Electl. Cas. 300, 75 Am. St. Rep. 300, 25 L. R. A. 554; *Giraudi* v. *Electric Improv. Co.* 48 Am. St. Rep. 114, 28 L. R. A. 596, 5 Am. Electl. Cas. 318; *Griffin* v. *United Elec. Light Co.* 49 Am. St. Rep. 477, 31 L. R. A. 400, 6 Am. Electl. Cas. 252; *McLaughlin* v. *Louisville Elec. Light Co.* 6 Am. Electl. Cas. 255, 34 L. R. A. 812; *Perham* v. *Portland Elec. Co.* 72 Am. St. Rep. 730, 40 L. R. A. 799; *Brown* v. *Edison Elec. Illum. Co.* 46 L. R. A. 745; *Brush Elec. Light Co.* v. *Lefevre*, 49 L. R. A. 771; *Newark Elec. Light Co.* v. *Garden*, 6 Am. Electl. Cas. 275, 37 L. R. A. 725; *Ennis* v. *Gray*, 5 Am. Electl. Cas. 325; *McMullen* v. *Edison Elec. Illum. Co.* 5 Am. Electl. Cas. 332; *Augusta Ry. Co.* v. *Andrews*, 4 Am. Electl. Cas. 378.

Duty of electrical companies to their employees—Electric shocks: *Colorado Elec. Co.* v. *Lubbers*, 7 Am. St. Rep. 255, 2 Am. Electl. Cas. 361; *Myhan* v. *Louisiana Elec. Light Co.* 17 Am. St. Rep. 436, 7 L. R. A. 172: *Western Union Tel. Co.* v. *McMullen*, 32 L. R. A. 351, 6 Am. Electl. Cas. 338; *McAdam* v. *Central Ry. & Elec. Co.* 6 Am. Electl. Cas. 348; *Harroun* v. *Brush Elec. Light Co.* 6 Am. Electl. Cas. 357; *Junior* v. *Missouri Elec. Power Co.* 5 Am. Electl. Cas. 369; *Kraatz* v. *Brush Elec. Light Co.* 3 Am. Electl. Cas. 491.

Right of a traveler to recover for injuries resulting from attempting to remove obstructing wire from a public highway: *Bourget* v. *City of Cambridge*, 4 Am. Electl. Cas. 374, 16 L. R. A. 605.—REPORTER.

the ground immediately under the broken wire, in an insensible condition, his right hand badly burned, and the back of his head so burned that the flesh thereafter sloughed off, leaving a circular space, about three inches in diameter, bare to the skull. No one witnessed the accident, and the plaintiff was unable to give any account of how it occurred, but it is agreed that it was caused by contact with the broken wire. It is alleged in the complaint, among other things, that defendant did not exercise due care and diligence in replacing and taking care of the wire after it had parted on the evening of the sixth, and is therefore liable for the injury suffered by the plaintiff. The answer denies the negligence charged, and for an affirmative defense alleges contributory negligence. The trial resulted in a verdict in favor of the plaintiff for $5,000, which was reduced by the trial court to $2,500, and a judgment entered accordingly. The defendant appeals, assigning as error the misconduct of plaintiff's counsel, and the giving and refusal of certain instructions by the trial court.      REVERSED.

For appellant there was a brief over the name of *Dolph, Mallory & Simon,* with an oral argument by *Mr. Rufus Mallory.*

For respondent there was a brief over the name of *Dufur & Menefee,* with an oral argument by *Mr. E. B. Dufur.*

MR. CHIEF JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1. During the trial, one Leonard C. Jones testified in behalf of defendant, and was cross-examined by plaintiff's attorney. Thereafter, and before the close of the trial, plaintiff applied to the court for leave to recall the

witness for further cross-examination. An objection was made, during the consideration of which counsel stated that he desired to recross-examine the witness in reference to his connection with an accident insurance company and its relation to the defendant. The court denied the application, and refused to permit the witness to be recalled. The record further shows that, during the closing argument of counsel for the plaintiff, he was interrupted by the defendant's counsel, who said : "What is that? I understand counsel to say that Jones was representing an insurance company that indemnified this company. If he said that, he deserves to be reprimanded for it. There is not a word of testimony here on that subject. He has no right to make such a statement in the presence of the jury. He had not concluded his statement, but made an allusion to the subject before I caught him up on it. He did say that he (Jones) belonged to an insurance company that indemnified this company." The court thereupon instructed the jury to disregard matters not in evidence. The record does not contain the statements of counsel to which objection was made, and their purport can only be inferred from the objection itself. It is insisted, however, that his conduct, as disclosed by the record, is reversible error. It has been repeatedly held by this court that error must be predicated upon some decision of the trial court, and therefore, as a general rule, an objection to statements made by counsel during the argument presents no ground for review in the appellate court unless the trial court was requested to rule thereon, and did so adversely to the complaining party. The question arose in *State* v. *Anderson*, 10 Or. 448, where it is said that "improper comments of counsel, either in a civil or criminal case, will not of themselves justify a reversal of judgment, under our system. They must be connected upon the

record with error of the court, to produce such a result; and, as no such error is shown here, the alleged exception cannot be sustained." Again, in *State* v. *Abrams*, 11 Or. 169 (8 Pac. 327), it is said: "We have announced this principle before, * * * and we now lay it down, as a rule to which there can be no exceptions, that no objection to proceedings in the court below can be heard in .this court which is not based on alleged error in judicial action on the part of the lower court." See, also, *State* v. *Hatcher*, 29 Or. 309 (44 Pac. 584). In the case at bar, the remarks of counsel did not receive the sanction or approval of the trial court, but, on the contrary, it declined to permit him to proceed., and, in effect, instructed the jury to disregard any statements made in reference to facts not in evidence, and therefore, within the doctrine of the cases cited, the matter presents no question for review on appeal. It may be true that the conduct of an attorney in going out of the record, and stating facts to the jury not in evidence, may be so reprehensible and so manifestly intended to mislead the jury as to be ground for reversal, even if the trial court should direct the jury to disregard what he said on the subject: *Smith* v. *Western Union Tel. Co.* 55 Mo. App. 626; *Waldron* v. *Waldron*, 156 U. S. 361 (15 Sup. Ct. 383), 39 L. Ed. 453; *McHenry Coal Co.* v. *Sneddon*, 98 Ky. 684 (34 S. W. 228). But this case presents no such features. There is nothing to indicate that the conduct of counsel was in any way improper or intended to unduly influence the jury. As already said, his language is not contained in the record; but, whatever it may have been, it no doubt was uttered in the heat of argument and without any intentional wrong on his part. In such case, it is not only the right, but the duty, of the trial court, when called upon, to correct the error into which counsel has fallen,

and when it does so, as a general rule, the cause of reversal is thereby removed.

2. The principal question on the trial was whether the defendant was negligent in not removing the broken wire. Plaintiff insisted that it was negligence to allow the wire to remain thirteen hours after it fell before taking care of it, while defendant contended that it exercised the utmost diligence in repairing the damages to its system caused by the storm, but was unable to reach the wire in question prior to the accident. The court, after stating to the jury the respective positions of the parties, and that whether the defendant had exercised reasonable care and diligence in the matter was a question of fact for their determination, further instructed them as follows: "The suggestion is made that they (defendant company) had not sufficient force to carry on this work, to raise all these fallen wires, as early, perhaps, as they ought to have done ; but companies of this sort, dealing with one of the most subtle and powerful agencies known to man, cannot plead want of assistance and amount of expense as an excuse for any dilatoriness whatever. The law requires reasonable care, and reasonable care must be determined by all the circumstances attending the transaction—what took place at the time, what took place before." And, again: "Reasonable care in such matters means the utmost care and skill which a man is capable of exercising, considering the immediate circumstances in hand. So it must be, then, that if there was not sufficient force in order to prevent dangers that might arise from fallen wires, if you find from the testimony in the case that the defendant was negligent or dilatory in raising the wires that had fallen, that considerable time elapsed after it was broad daylight the next morning before the agents, servants of the company, made their appearance to repair the wires, you will con-

sider that question in connection with the question of damages and upon the issue of negligence." It is insisted, and we think properly, that this instruction imposed a higher degree of duty, as a matter of law, upon the defendant company than is exacted of it.

An electric light company that has erected its poles and wires in the streets of a municipality, with the consent of the proper authorities, is not an absolute insurer against accident therefrom. It is only bound to exercise care and diligence in the erection and maintenance of its system proportionate to the danger: Croswell, Electricity, § 236; Keasbey, Electric Wires (2 ed.), § 236, *et seq.; Denver Consol. Elec. Co.* v. *Simpson,* 21 Colo. 371 (31 L. R. A. 566, with note; 41 Pac. 499) — and when it has fulfilled this duty it has discharged its entire obligation, and its liability ceases. The question of whether or not it has exercised reasonable care is for the jury to decide upon the facts of each particular case, except when reasonable minds could not possibly differ in their conclusions upon the facts. The amount of care necessary, of course, varies with the danger which is incurred by negligence; and, in determining the question, it is proper for the jury to take into consideration the location of the lines, whether in a thickly or sparsely settled portion of the municipality, the use to which they are to be put, the harmless or dangerous nature of the current to be transmitted over them, their remoteness or proximity to travelers on the highway, and any other circumstances affecting the case. But where, as the evidence here tends to show, the wires of a company supplying a city of the size and area of Portland have been prostrated in numerous places at the same time by reason of an unusual and unexpected storm, it is imposing upon the company a duty not required by any of the decisions to say that it cannot show, as an excuse for a delay in taking care of a

particular wire in a suburban part of the city, the want of assistance sufficient to immediately repair all the damages caused by the storm. Whether the defendant company had in its employ a large enough force of men to meet the emergency, and whether its want of assistance was an adequate excuse for its delay in not sooner taking care of the wire which caused plaintiff's injury, were proper matters for the consideration of the jury in determining the question whether it had exercised reasonable care and diligence; but it was not the province of the court to say, as a matter of law, that want of assistance was no excuse for the delay. That question belonged to the jury, not to the court. It follows that the judgment must be reversed, and a new trial ordered.

REVERSED.

---

Decided 13 August, 1900.