Argued January 22, affirmed February 10, rehearing denied June 30, 1914.

# SAXTON v. BARBER.

## (139 Pac. 334.)

**Appeal and Error—Review—Questions of Fact—Conflicting Evidence.**

1. Where the evidence is in conflict, the weight thereof is wholly for the jury, and the verdict will not be disturbed by the Supreme Court.

**Husband and Wife—Alienation of Affections—Actions—Evidence.**

2. In an action for alienation of affections of plaintiff's wife, illicit intercourse between defendant and plaintiff's wife need not be shown by direct evidence, but resort may be had to circumstantial evidence from which the overt act may be inferred.

[As to actions by husband for alienation of wife's affections, see notes in 44 Am. St. Rep. 845; Ann. Cas. 1912D, 619.]

**Husband and Wife—Alienation of Affections—Actions—Evidence.**

3. In an action for alienation of affections of plaintiff's wife, evidence *held* sufficient to authorize an instruction that it is not necessary that an adulterous disposition on the part of defendant be proven by direct evidence, but it may be shown by the relations of the parties, or, in other words, may be shown by circumstantial evidence.

**Husband and Wife—Alienation of Affections—Actions—Instructions.**

4. In an action for alienation of affections of plaintiff's wife, an instruction that it is not necessary to show that defendant's conduct was the sole cause of alienation of the wife's affections, but it is sufficient if it was a contributing cause, considered in connection with instructions, that if defendant wrongfully alienated the wife's affections, the fact that he had illicit intercourse with her may be considered in determining damages, and that this is a civil case, and the affirmative of the issues must be proved, and the finding should be in accordance with the preponderance of the evidence, sufficiently advised the jury that plaintiff must show, by a preponderance of the evidence, that defendant alienated the wife's affections.

**Husband and Wife—Alienation of Affections—Actions—Evidence.**

5. In an action for alienation of affections of plaintiff's wife, testimony as to references by the wife in her conversation to defendant, and a tendency on her part to show him favoritism, and that she was irritable towards her husband and spoke cross to him, was admissible.

From Crook: WILLIAM L. BRADSHAW, Judge.

This is an action by John W. Saxton against W. C. Barber. From a judgment in favor of plaintiff, defendant appeals. The facts are stated in the opinion of the court.                AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. W. P. Myers* and *Mr. Enoch B. Dufur*.

For respondent there was a brief with oral arguments by *Mr. William H. Wilson* and *Mr. G. A. McFarlane*.

Department 2.   MR. JUSTICE MCNARY delivered the opinion of the court.

On the 8th day of May, 1912, John W. Saxton, plaintiff herein, commenced an action against the defendant, W. C. Barber, to recover damages alleged to have been sustained by reason of the fact that defendant had secretly, and, by all the arts and means within his power, contrived to injure plaintiff by seducing his wife and depriving him of her comfort, society, and assistance, and thereby win her love and affection. Judgment for $30,000 was sought by plaintiff, though judgment for $1,000 was entered responsive to the verdict of the jury.   Defendant in his answer denies the averments in plaintiff's declaration, save that defendant admits he visited the home of plaintiff as a friend and neighbor, and upon the frequent invitations of plaintiff, free from any wrongful or wicked motive. Continuously for seven years next preceding the commencement of this action, excepting a few months spent on an irrigated ranch in Central Oregon, plaintiff, with his wife, Ida May Saxton, and their family of four children, have resided upon a farm in Crook County, near by the town of Opal City.   During the whole of this time the defendant, an unmarried man, has resided upon an adjoining farm.

1. The first error of which complaint is made is that the trial court committed a legal wrong in refusing to direct a verdict for defendant, particularly in this: That there was no evidence tending to show that de-

fendant had been guilty of any act calculated to alienate the affections of plaintiff's wife, nor evidence offered tending to indicate an adulterous relation between defendant and the wife of plaintiff. It is impossible, within the limits of this opinion, to set out the evidence *in toto,* or any considerable portion thereof. However, we must pause long enough to say that there was evidence introduced conducing to show the continued associations of defendant with plaintiff's wife over a period of years, under such circumstances as to suggest a studied and intentional purpose by defendant to alienate the affections of plaintiff's wife, and such intimacy of relation as would give birth to an inference of adulterous conduct between the defendant and Ida May Saxton, the wife of plaintiff. True, the allurements offered by defendant were not such as would ordinarily divert the current of love in the breast of a constant woman, yet, they were of a character commensurate with the surroundings, and consisted of supplying plaintiff's wife with funds sufficient to leave her home and husband when peeved by his treatment, the bringing of sweetmeats to, and playing with plaintiff's children, and in frequent visitations to plaintiff's home. That this conduct upon the part of defendant had its effect in arousing the jealous ire of plaintiff is well attested by the language contained in the post card which plaintiff mailed to and which was received by defendant:

"Don't stand around the corners
    And try your best to flirt,
Don't smile and give the naughty eye
    To everyone who wears a skirt.

"Now if you do not change your ways
    It will cease to be a joke,
For some sweet girlie's brother
    Will give you an awful soak."

Without going further into the evidentiary part of this case, it is sufficient to say we have read all of the evidence with care, and note that plaintiff produced evidence tending to establish the averments contained in his complaint, and that defendant testified on his own behalf, and that his testimony is consistent with his answer. Upon many of the issues there was a conflict of evidence; the weight thereof being wholly within the province of the jury. This court not being able to say affirmatively that there is no evidence to support the verdict, it is not then the purpose of this court to disturb it. We, therefore, conclude that the trial court committed no error in overruling the motion for a directed verdict.

2. It is contended that the court erred in giving to the jury the following instruction:

"I charge you that in this case it is not necessary that illicit intercourse between the defendant and the plaintiff's wife be directly proven. If that were so, it could seldom be proved. Positive evidence of the commission of adultery is rarely possible, and resort may be had to circumstantial evidence from which the overt act charged may be inferred, if you find from the evidence in the case that the overt act is inferable from the circumstances proven in the case."

While mere opportunity to commit adultery is not sufficient to establish this offense, still the law does not require that plaintiff prove the connubial relation by direct testimony. If it were necessary to prove the charge of sexual intercourse by direct testimony, seldom indeed would the charge be ever substantiated, for participants in that indulgence carefully keep the light of their wrong hid under a bushel and it is only by the invocation of the rule permitting the admission to the jury of circumstantial evidence that sexual gratifications of that character can be proved. As well

said by Justice GRANT in *Brown* v. *Evans,* 149 Mich. 431 (112 N. W. 1079):

"There must be evidence of such facts and circumstances, times, and places, and associations together as would naturally lead a man of ordinary care and prudence to the conclusion that such parties were having illicit sexual intercourse."

The sentiment of this court was admirably expressed by Mr. Chief Justice MOORE, in *State* v. *Eggleston,* 45 Or. 346 (77 Pac. 738), and approved in *State* v. *La More,* 53 Or. 261 (99 Pac. 417), in this language:

"Positive evidence of the commission of adultery is rarely possible, and, as crimes against morality and decency must not go unpunished, a resort must be had to circumstantial evidence, from which the overt act charged may be inferred."

The advice to the jury contained in the instruction, about which defendant grieves, was a correct exposition of the law, and left to the judgment of the jury whether illicit intercourse between defendant and plaintiff's wife was to be gathered from the circumstances surrounding the plot and play of the participants.

3. Complaint is made of the court's action in giving the following instruction to the jury:

"It is not necessary that an adulterous disposition on the part of the defendant be proven by direct or positive testimony to that particular point; but this may be inferred from the conduct of the parties and from the associations and relations which existed between the parties, if you find from the evidence that such association and relations establish such adulterous disposition, or, in other words, proof of an adulterous mind on the part of either or both of the parties may be established by circumstantial evidence."

The objection to the giving of this instruction is not rooted upon its legal incorrectness, but rather as to its inapplicability due to an alleged dearth of testimony tending to show an adulterous disposition on the part of either defendant or the wife of plaintiff. This again brings us to a brief generalization of the testimony. The jury properly could have and perhaps wisely did infer that a carnal disposition was shown in the conduct of defendant in frequenting the home of plaintiff, and in plaintiff's wife receiving the visitations of defendant in the absence of plaintiff, and that their familiar conduct about the home was such as to suggest the gratification of the passions of two adulterous minds. We think the record contains competent testimony sufficient to support the instruction attacked.

4. Next it is contended that the court committed error in advising the jury that:

"In a case of this kind it is not necessary to show that the defendant's conduct was the sole cause of the alienation of the wife's affections, if you find from the evidence her affections were alienated, but it is sufficient if you find from the evidence in the case that the wrongful acts of the defendant were a contributing cause of the alienation of the affections of plaintiff's wife, if you find from the evidence that such affections were alienated."

The fitness of this charge cannot be determined by its isolation from other parts of a kindred nature. On this point the court further said:

"If you should find from all the evidence in the case that the defendant wrongfully alienated the affections of the plaintiff's wife from the plaintiff, and also had illicit sexual intercourse with her, then the fact that he had illicit intercourse with the plaintiff's wife may be considered by you in determining the amount of damages which the plaintiff would be entitled to recover of the defendant. This is a civil case, and the

affirmative of the issues shall be proved, and where the evidence is contradictory, the finding should be in accordance with the preponderance of the evidence."

Considering the charge in its entirety as covering one phase of the case, we think the jury could not have been misled as to the law, and that the court admonished the jury that plaintiff, in order to prevail, must show by the preponderance of the evidence that defendant alienated the affections of plaintiff's wife. It cannot be doubted the general rule is that there is no ground for an action where a spouse voluntarily gives his or her affections to another; the latter doing nothing wrongful to win such affections. To support an action for alienating a husband's or wife's affections, it must be established that the defendant is the enticer. Mere proof of abandonment, and that the husband or wife maintains improper relations with the defendant, is not sufficient: *Scott* v. *O'Brien,* 129 Ky. 1 (110 S. W. 260, 130 Am. St. Rep. 419, 16 L. R. A. (N. S.) 742,); 15 Am. & Eng. Ency. of Law (2 ed.), 895; 21 Cyc. 621. We think there was no error in giving this instruction. The jury was plainly told that the wrongful conduct of defendant must have been the contributing cause of the alienation, though not necessarily the sole cause, but that plaintiff could recover only upon producing a preponderance of the evidence showing that defendant had wrongfully alienated the affections of plaintiff's wife. The instructions taken as a whole have the effect of telling the jury that defendant's conduct must have been the controlling cause of the alienation.

It is urged the court erred in failing to give certain instructions requested by counsel for defendant, but after a thorough consideration of the instructions requested, and those given by the court, we conclude that

the proposition contained in the requested instructions, so far as applicable to the law of this case, were covered by the instructions of the court given upon his own motion.

5. Counsel for defendant insist that error was committed in introducing, over defendant's objection and exception, testimony elicited from a witness by the name of Mary Patton, who had two conversations with Ida May Saxton, the wife of plaintiff, relating to her feelings for defendant. The testimony to which objection was made is as follows:

"Q. What was the habit of Mrs. Saxton, if you know, in reference to talking about the defendant, Barber?

"A. She always showed great favoritism about him.

"Q. This may be gotten at by your stating whether she was in the habit of talking about him or not.

"A. Yes, sir.

"Q. What time do you refer to, when was she in the habit of talking about him, as to whether it was during all the time you were living out there, or only a portion of the time?

"A. All the time during my acquaintance with her.

"Q. In what way would she talk about him?

"A. Telling me about him, talking about his illness when he had typhoid fever; that he was a friend of the family, and they thought a great deal of him; and she showed decidedly— (Stopped by court on objection of defendant).

"Q. You may state whether or not she appeared to want to talk about him.

"A. Yes, sir.

"Q. Who would start these conversations about him?

"A. Mrs. Saxton.

"Q. In what way would she talk about him, as to whether or not she was saying pleasant things about him, or ugly ones?

"A. Always pleasant.

"Q. What was the general substance of her talk about him?

"A. I hardly know how to answer that. She informed me a good many times about his business affairs; really things he was doing and concerned about. Mrs. Saxton informed me about it in a general way, and she showed favoritism—

"Q. See if you can describe that in some other way. You may state whether or not she made statements in reference to his business affairs or not.

"A. Yes.

"Q. Have you ever been about the house, her house, at times when she would be commenting at what would be going on at his place?

"A. Yes, sir.

"Q. Tell about that.

"A. She generally knew about his customs on mornings, from his curtain, and the view that she had of his house from her back window, and there was one thing she talked about often, mentioning that she knew whether he was up or not, what he was going to do during the day, and so on.

"Q. Did you have any conversation with her in reference to the separation of the plaintiff and his wife (interrupted)?

"Q. What did she say at that time in reference to her feelings toward the defendant?

"A. She said she felt very kindly toward him, and said he had always been a friend of the family and treated her so well she could not help thinking a good deal of him.

"Q. Did you make any remark to her?

"A. I said a person could not help liking anybody who had been good to them, and she answered by saying, 'You bet your life they can't.'

"Q. At what time was this?

"A. That was during the day that they had this final trouble in the morning, and this was perhaps—

"Q. About when was this conversation?

"A. During the forenoon, perhaps an hour later."

We think this testimony was eminently proper, for the purpose of establishing at least one component of the cause of action, namely, that the affections of the wife of plaintiff had been transferred from her husband to the defendant, and any declaration made by plaintiff's wife, susceptible in its character to show the state of her feelings toward either her husband or defendant, was admissible. The very heart of an action of this character is the passing of the affections of the wife from her husband to that of a paramour, and this unfortunate situation can only be unfolded by proof of the conduct and expressions of the wife toward her husband and the defendant in the case: 21 Cyc. 625; 1 Ency. of Ev. 759, note 10.

The same objection was made, and the same ruling and rule is applicable, to the testimony of the witness May Blair, who described the actions of Mrs. Saxton toward her husband by saying: "She was irritable toward him, and spoke very cross to him."

We find no errors which would justify a reversal, and for that reason affirm the judgment of the lower court.                                          AFFIRMED.

MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE MOORE concur.