Argued March 20, affirmed, except as to defendant Chamberlain, April 2, 1918.

## WATTS *v.* SPOKANE, P. & S. RY. Co.*

(171 Pac. 901.)

**Trial—Motion for Nonsuit—Consideration.**

1. In considering a motion for nonsuit, all the testimony on the part of the plaintiff is regarded as true, together with every intendment and reasonable inference which can arise therefrom.

**Carriers—Passengers—Contributory Negligence—Question for Jury.**

2. In an action for injuries to a passenger while alighting from defendant's train, whether plaintiff was negligent *held* a question for the jury.

---

*Authorities discussing the question of duty of carrier to assist passengers boarding and alighting are collated in note in 48 L. R. A. (N. S.) 816.

On duty of railroad company to assist infirm passenger, see notes in 8 L. R. A. (N. S.) 299; 48 L. R. A. (N. S.) 819.

On duty of carriers as to time allowed passengers to alight, see note in 4 L. R. A. (N. S.) 140.        REPORTER.

Carriers—Discharging Passengers—Length of Time for Stopping.

3. A passenger is entitled to a reasonable time in which to leave the train when he reaches his destination, and if the train is started suddenly while he is in the act of alighting and he sustains injury thereby, the carrier is responsible for the negligence which produced the injury.

> [As to a passenger's rights and a railroad company's duties to him when alighting from train, see note in 50 Am. Rep. 527.]

Carriers—Discharging Passengers—Contributory Negligence.

4. Contributory negligence in alighting from a train about to start, or starting may depend on the mental and physical capacity of the passenger.

Trial—Misconduct of Attorneys—Recrimination.

5. Where attorneys on one side remarked concerning the veracity of an attorney on the other side, reference by the latter to the Jewish genealogy of the witnesses produced by the former was not reversible error.

Appeal and Error—Misconduct of Attorneys—Where Reversible.

6. Language and conduct of counsel will justify a reversal only when connected with some judicial error on the part of the trial judge.

Appeal and Error—Harmless Error—Statute—Instructions.

7. An instruction concerning duty of carrier to furnish a platform or stool to aid passengers in alighting, where the only material issue was as to whether a passenger fell off a moving train or jumped off, *held* not reversible, in view of Article VII, Section 3, of the Constitution, where it did not change the result.

Carriers—Discharging Disabled or Infirm Passengers.

8. If a carrier knows of mental or physical disability of a passenger, by appearance or otherwise, it should give the passenger such assistance in alighting as the known condition renders necessary.

Appeal and Error—Review—Amount of Damages—Question for Jury.

9. The range of power of the jury as to the amount of damages in a personal injury case is very large, and the verdict will not be reviewed where supported by the evidence.

Carriers—Injury to Alighting Passenger—Liability of Conductor.

10. Evidence *held* insufficient to warrant a finding that a conductor of a train was personally negligent as to a passenger injured while alighting.

McCAMANT, J., Dissenting.

From Columbia: JAMES A. EAKIN, Judge.

Department 2. This is a personal injury case. The defendants appeal from a judgment rendered upon a verdict. The gist of the complaint as to the

88 Or.—13

negligence is as follows: After the averments of the corporate and business character of the defendant company and that C. E. Chamberlain was conductor and R. O. Burgess brakeman on the train of the railroad company, the pleading states that on April 9, 1915, plaintiff, John W. Patrick, a man 74 years of age, purchased a ticket and was a passenger on defendant company's train from Rainier, Oregon, to Goble, Oregon, where the train arrived at 8:37 P. M., about fifteen minutes late; that in attempting to make up time the defendants negligently failed to allow the train to stop at Goble, plaintiff's destination, a sufficient length of time to permit him safely to alight therefrom, and carelessly started the train while he was attempting to leave it; that plaintiff was enfeebled in powers of locomotion, infirm and in a weakened condition which was obvious and plainly visible from his appearance and which was well known to defendants, Chamberlain and Burgess, or might have been known to them by the exercise of ordinary care and observation; that defendants carelessly and negligently failed and neglected to provide any platform, step, contrivance, means, or assistance to enable plaintiff safely to alight from the train; that when plaintiff was upon the platform of the car which was rendered unsafe and dangerous by the premature starting of the train defendant Burgess was on the platform of the adjoining car and was in a position to see the condition and danger of the position of plaintiff and with ordinary care and caution could have prevented the injury, but that he neglected to stop the train or do anything to prevent the injury; that when plaintiff in attempting to leave the train had reached the steps of the coach upon which he was riding, on account of the negligent start-

ing and running of the train without giving him
sufficient time to alight therefrom (here specifying
the acts of negligence as above) he was forcibly and
violently thrown from the train by its motion and
jarring and was thereby seriously injured to his
damage.

By its answer the defendant company admits its
incorporation; that plaintiff was a passenger on its
train on the date alleged, and that while alighting
therefrom at Goble, he fell and sustained some
injuries. It denies the other allegations of the
complaint and further alleges that plaintiff's own
negligence caused or contributed to cause the accident.

The separate answers of defendants, Chamberlain
and Burgess, deny the main allegations of the com-
plaint and also allege contributory negligence.

The replies controverted the new matter of the
answers.

AFFIRMED, EXCEPT AS TO DEFENDANT CHAMBERLAIN.

For appellant, Spokane, Portland & Seattle Rail-
way Company, there was a brief over the names of
*Messrs. Carey & Kerr* and *Mr. Charles A. Hart*, with
an oral argument by *Mr. Hart*.

For appellant, C. E. Chamberlain, there was a brief
over the names of *Mr. George C. Fulton* and *Mr.
Oscar Furuset*, with an oral argument by *Mr. Fulton*.

For respondent there was a brief over the names of
*Mr. Edmund B. Tongue* and *Mr. Glen R. Metsker*, with
an oral argument by *Mr. Tongue*.

BEAN, J.—When plaintiff had introduced his evi-
dence and rested his case counsel for defendants
moved the court for a judgment of nonsuit. This

motion was denied and the refusal is assigned as error. At the close of all the testimony defendants' counsel requested a directed verdict in favor of defendants which was disallowed and such ruling is also assigned as error. These assignments raise the same question.

1. It is a well-established rule in this state that in the consideration of a motion for a nonsuit all the testimony on the part of plaintiff is to be regarded as true, together with every intendment and reasonable inference which can arise therefrom. Considering the same in this manner, if a difference of opinion may exist as to the conclusions of fact which may be drawn from the evidence, the case should be submitted to the jury to pass upon the issues: Article VII, Section 3, of the Constitution; *Smitson* v. *Southern Pac. Co.,* 37 Or. 74 (60 Pac. 907); *Consor* v. *Andrew,* 61 Or. 483 (123 Pac. 46); *Domurat* v. *Oregon-Wash. R. & N. Co.,* 66 Or. 135 (134 Pac. 313); *Nelson* v. *St. Helens Timber Co.,* 66 Or. 570 (133 Pac. 1167, 135 Pac. 169); *Sigel* v. *Portland Ry., L. & P. Co.,* 67 Or. 285 (135 Pac. 866); *Smith* v. *Badura,* 70 Or. 58 (139 Pac. 107); *Isaacson* v. *Beaver Logging Co.,* 73 Or. 28 (143 Pac. 938); *Johnson* v. *Portland Ry., L. & P. Co.,* 79 Or. 403, 410 (155 Pac. 375). It is the contention of counsel for the defendants, Spokane, Portland & Seattle Railway Company and Burgess, that conceding there was evidence of negligence on the part of defendants in failing to stop the train a sufficient length of time for plaintiff to alight therefrom in safety, plaintiff was guilty of negligence in stepping from a place of safety off the car when it was in motion and that such act on his part intervened between the negligent failure to stop the train a sufficient length of time at the station and the injury of plaintiff, and was the proximate cause of the hurt.

It is the contention of counsel for plaintiff that he fell or was thrown off the car and that he did not alight therefrom when it was in motion. The evidence on the part of the plaintiff tended to support his contention and the averments of the complaint. There was a sharp dispute as to whether plaintiff jumped or fell. The evidence of defendants tended to support the position of the company. The testimony in the record tended to show that on the day of the occurrence complained of Mr. Patrick and two companions, William H. Wagner and John M. Lindsay, went from Goble, Oregon, to Kalama, Washington, to celebrate the anniversary of the surrender of Lee at Appomattox Court House. Returning in the evening they boarded the train at Rainier and when it arrived near Goble, the brakeman Burgess called that station and just before the train came to a stop the three men raised up from their seats in the smoking-car which were about two thirds the length of the car from the rear and proceeded towards that end of the car. Mr. Lindsay was ahead and had not reached the end of the car when it stopped. Mr. Wagner was right behind him. Before Lindsay got off, the car started. Wagner was next and when he got off, the train was going so fast it was difficult for him to keep his feet. Mr. Patrick was behind Wagner and he stepped down to the lower step of the car holding on to the "grab-irons." The train ran the length of a car or a car and a half when he fell off. The rate of speed was about four miles an hour when the train had gone only a few feet. Wagner testified in substance to the facts above narrated, and that after he alighted he was looking at Patrick and that "it looked like he fell off." Mr. Lindsay also testified in effect as above stated. The testimony also

indicates that the train stopped at Goble ten or twelve seconds. It was dark at the time. The brakeman Burgess with a lantern in his hand assisted a woman with a baby to alight from the front part of the coach next to the smoker and two or three other men got off the train there. He then threw his stool up on the platform, signaled for the train to go ahead and started up the steps of the smoker and as Patrick fell he (the brakeman) pulled the bell cord and the train stopped. Ernest Archibald, a lad of eighteen years, who with another boy was at the depot with Mr. Patrick's son, who came to meet his father, detailed the occurrence as follows:

"Q. Tell the jury what you saw from the time the train stopped until this occurred?

"A. Just as the train was coming to a stop I saw Mr. Lindsay and Mr. Wagner and Mr. Patrick get up and start for the back end of the coach, and when the train stopped the brakeman got off and put his stool on the ground, and I noticed a couple of women get off, and I don't know whether there was anybody else got off; and the conductor said 'All right here,' and the brakeman said 'All right here' and he said 'All on board' and he got up and threw his stool up and the train started, and Mr. Lindsay got off and Mr. Wagner got off, not as good as Mr. Lindsay did, and Mr. Patrick was down there hanging with his hand holding on that rod and his hand on the side of the car and it looked like he was trying to get back, or something, and the brakeman, in the meantime was standing there watching him, and just as I saw Mr. Patrick fall he jerked the string."

On cross-examination this witness said:

"He started to get off. He didn't get off."

The other two boys who were standing looking at the train at the time testified in corroboration of young Archibald.

In January, 1916, plaintiff left the hospital to attend the trial and testified in substance as follows:

"A. The 15th—my memory is awful bad. On the 15th of the month I went to—Wagner and myself went to Rainier and when we were coming back on the train we were on they threw me off—I fell off of the car; they threw me off of the car down and mashed me up, that is about as much as I can tell you."

2. Under all the circumstances it was a question for the jury whether the plaintiff acted as a reasonably prudent and careful man would under the conditions prevailing at the time of the injury. From the evidence the jury evidently believed that when he descended the car steps the plaintiff was expecting that the train would be stopped in order for him to get off at his destination, and while he was endeavoring to get back on to the platform of the car the movement of the train threw him off to the ground.

3, 4. A passenger having reached his destination is entitled to a reasonable time in which to leave the train that has transported him. If the train is started suddenly while he is in the act of alighting and he sustains injury thereby the carrier is responsible for the negligence which produced the injury: *Smitson* v. *Southern Pac. Co.*, 37 Or. 74, 80 (60 Pac. 907), and cases there cited. We cannot say there was no evidence to support the finding of the jury.

During the cross-examination of plaintiff's witnesses, counsel for the company appeared to recognize that the evidence purported to show that Mr. Patrick fell off the car instead of stepping off. In the cross-examination of the witness Archibald, after referring to the position of the train, the defendants' counsel inquired:

" * * When Mr. Patrick fell he was about one hundred and fifty feet along the track?"

Where there is a dispute as to the facts or if there is no dispute as to the facts, but yet there may reasonably be a difference of opinion as to the inferences and conclusions of fact which may be deduced therefrom the question is for the determination of the jury: *Smitson* v. *Southern Pac. Co.,* 37 Or. 74–77 (60 Pac. 907); *Shobert* v. *May,* 40 Or. 68 (66 Pac. 466, 91 Am. St. Rep. 453, 55 L. R. A. 810); *Hedin* v. *Suburban Ry. Co.,* 26 Or. 155, 160 (37 Pac. 540); *Sullivan* v. *Wakefield,* 59 Or. 401 (117 Pac. 311); *Hartford Ins. Co.* v. *Central R. R.,* 74 Or. 144 (144 Pac. 417); *Delovage* v. *Oregon Creamery Co.,* 76 Or. 430 (147 Pac. 392, 149 Pac. 317). The court is justified in taking a case from the jury only when the presumption and evidence of negligence is overcome by undisputed testimony: *Caraduc* v. *Schanen-Blair Co.,* 66 Or. 310 (133 Pac. 636). It is unnecessary for us to consider the weight of the evidence: *Strickler* v. *Portland Ry., L. & P. Co.,* 79 Or. 526, 533 (144 Pac. 1193, 155 Pac. 1195); *Wasiljeff* v. *Hawley Paper Co.,* 68 Or. 487 (137 Pac. 755); *Saxton* v. *Barber,* 71 Or. 230 (139 Pac. 334). It evidently seemed to the jury that as plaintiff and his comrade rode only between two stations but little attention was paid to them and that plaintiff was neglected and was not afforded a reasonable time to alight from the train; that the brakeman Mr. Burgess was present and ought to have seen him and assisted him or stopped the train; that the failure to do so was occasioned by the lateness of the train; and that the plaintiff was not guilty of any negligence. The plaintiff's station was called for the purpose of warning him to leave the train. He proceeded to the platform as it was his right and duty to do. The train was stopped and the doors were opened as an additional invitation for him to make his exit. The jury would not be com-

pelled to expect the same conduct on the part of plaintiff when he found that the train was in motion that would be looked for from a trainman accustomed to and skilled in such matters. Reasonable prudence and care under the circumstances would be what they would naturally require of plaintiff. The question of contributory negligence under the evidence in this case was one for the jury: *Sullivan* v. *Wakefield,* 59 Or. 401 (117 Pac. 311). What will constitute ordinary care on the part of the passenger may depend, however, on the mental and physical capacity of the passenger himself. An act which might be negligent in a normal person may not be contributory negligence in view of the passenger's disability, such as will defeat his recovery for injury where the carrier has been negligent: 6 Cyc. 636–b (1). Contributory negligence is a question of law only where the facts are undisputed or where only one inference can be drawn from the evidence; *Greenwood* v. *Eastern Oregon Power Co.,* 67 Or. 433 (136 Pac. 336). The question of contributory negligence is always one for the determination of the jury: *Sullivan* v. *Wakefield,* 59 Or. 401 (117 Pac. 311). The evidence does not bring the case within the rule announced in *Armstrong* v. *Portland Ry. Co.,* 52 Or. 437 (97 Pac. 715). It has been said by this court in the case of *Wells* v. *Great Northern R. Co.,* 59 Or. 165 (114 Pac. 92, 116 Pac. 1070, 34 L. R. A. (N. S.) 818), that the proximate cause

"is any act or omission which directly puts into operation another agency or force, or interposes an obstacle whereby injury is inflicted that would not have happened except for the original negligent act or omission."

The jury might reasonably conclude that the plaintiff would have continued on out of the train and off

the same in perfect safety except for its being started:
See *Manning* v. *Portland Shipbuilding Co.,* 52 Or. 101
(96 Pac. 545). There was no error in denying the mo-
tion for a nonsuit nor in refusing a directed verdict.

5, 6. It is assigned as error and earnestly urged upon
our attention that the court erred in permitting counsel
for plaintiff in his opening argument to the jury, over
the objection and exception of defendants, to make cer-
tain statements to the jury in reference to defendants'
witnesses, in failing to instruct counsel to desist from
such statements and in not instructing the jury to dis-
regard the same. In order to pass upon the colloquy
between counsel it will be necessary to notice the begin-
ning thereof. It is the rule that if crimination is
granted, recrimination cannot be refused. If state-
ments on one side are permitted, counter statements on
the other cannot be denied: 1 Thompson on Trials (2
ed.), § 971; *Boyd* v. *Portland General Elec. Co.,* 37 Or.
567 (62 Pac. 378, 52 L. R. A. 509). It might be pre-
faced that there is a strong ring to every word spoken
by the learned counsel for defendants and it may be
possible that there was a slight sting in some of his
remarks. As we read the colloquy from cold type it
was initiated at intervals during the taking of testi-
mony about as follows: Two attorneys were witnesses
for defendants. Interrogating one of them we find at
page 67 of the transcript of testimony the following
questions by defendants' counsel:

"Do you think you can tell the truth notwithstand-
ing you are a lawyer?

"A. I will take a chance at it, as well as my friend
here can [indicating].

"Mr. Metsker [one of counsel for plaintiff]: Who do
you mean as your friend, me?

"A. Yes, sir.

"Mr. Metsker: I take an exception to that."

In answer to the question, "But you do know that these three people got off?" this witness injected his opinion as follows: "I do because I made the remark, 'What a damn fool a man was to jump off of a moving train.'" Counsel for defendants advised Mr. Metsker, one of plaintiff's counsel, to "get a dictionary." At page 101 of the transcript in the cross-examination of Mr. Burgess, witness for defendants, we find the following:

"Q. You watch them do that and make no objection to it and it is quite customary?

"A. Yes, I have seen you do the same thing, for instance.

"Q. I do not doubt it at all, I can get on a pretty fast train.

"A. Suppose you got hurt, what would you do?"

"Mr. Hart [counsel for defendants]: Sue the company.

"Mr. Metsker: Maybe I would and maybe I would not—if I got a deal this old man got, I certainly would.

"Mr. Hart: Trust you.

"Mr. Metsker: You would try to job me like you did the plaintiff in this case with your Jew witnesses—"

In his argument to the jury Mr. Metsker referred to the genealogy of these witnesses for the defendants. Contending that the evidence was incorrect and contradictory of the evidence of the plaintiff, counsel for defendants objected to this statement and was allowed an exception by the court. As to a portion of the statements objected to the court said that it was going beyond the issues and admonished the counsel. Counsel for defendants made no request for any further ruling by the court or that the jury be instructed to disregard the comments of counsel for the plaintiff. The court asked counsel for defendants what he de-

sired in the matter and he replied he was satisfied with the record. While many of the comments of counsel for plaintiff were improper and should have been curtailed at an early stage, they were, we think, in answer to a direct challenge by the language of counsel for the defendants and by one of the attorneys who was a witness. The language and conduct of counsel will justify a reversal only when connected with some judicial error on the part of the trial judge: *Nelson* v. *Brown & McCabe,* 81 Or. 472 (159 Pac. 1163) ; *State* v. *Anderson,* 10 Or. 448; *Boyd* v. *Portland General Elec. Co.,* 37 Or. 567 (62 Pac. 378, 52 L. R. A. 509) ; *State* v. *Blodgett,* 50 Or. 329, 344, (92 Pac. 820) ; *State* v. *Young,* 52 Or. 227, 234 (96 Pac. 1067, 132 Am. St. Rep. 689, 18 L. R. A. (N. S.) 688) ; *Madden* v. *Condon National Bank,* 76 Or. 363, 367 (149 Pac. 80). In the case of *Boyd* v. *Portland General Elec. Co.,* 37 Or. 567 (62 Pac. 378, 52 L. R. A. 509), the court stated:

"It has been repeatedly held by this court that error must be predicated upon some decision of the trial court, and, therefore, as a general rule, an objection to statements made by counsel during the argument presents no ground for review in the appellate court unless the trial court was requested to rule thereon, and did so adversely to the complaining party."

In *State* v. *Anderson,* 10 Or. 448, we find:

"Improper comments of counsel, either in a civil or criminal case, will not of themselves justify a reversal of judgment, under our system. They must be connected upon the record with error of the court, to produce such a result. * * *"

In *State* v. *Abrams,* 11 Or. 169, 172 (8 Pac. 327), we find the following language:

"We have announced this principle before, and we now lay it down as a rule to which there can be no ex-

ceptions, that no objection to proceedings in the court below can be heard in this court which is not based on alleged error in judicial action on the part of the lower court.''

See, also, *State* v. *Lem Woon*, 57 Or. 482, 494 (107 Pac. 974, 112 Pac. 427); *Watson* v. *Southern Oregon Co.*, 39 Or. 481 (65 Pac. 985). To justify reversal for misconduct of the counsel it must appear from the issues and from the state of the evidence that injury to the rights of the opposite party resulted: *State* v. *Morse*, 35 Or. 462 (57 Pac. 631); *State* v. *Birchard*, 35 Or. 484 (59 Pac. 468); *State* v. *Mims*, 36 Or. 315 (61 Pac. 888); *State* v. *McDaniel*, 39 Or. 161 (65 Pac. 520). We have too much confidence in the intelligence of a jury to believe that such a word war between counsel had any effect upon the result of their deliberations. Consumption of time is as much to be deplored as anything perhaps. Whether one of plaintiff's counsel struck back harder than the first verbal assault warranted is not required to be determined. The colloquy was in no way sanctioned by the trial court and we find no ground for reversal on account thereof.

7. At the time of the accident the train in question came to a halt so that the passengers would alight a little west of the front of the station. At this place there was planking between the rails about even therewith, but no raised platform. It does not appear from the record what the elevation of the platform immediately in front of the depot was. It will be remembered that *inter alia* a failure of defendants to furnish a platform or stool to enable plaintiff to alight safely was alleged. The stool used by the brakeman for the assistance of the woman in descending from the car was mentioned prominently in the testimony, but no stool

was offered for plaintiff's use. Under these circumstances the court charged the jury as follows:

"I instruct you that if you find that it was necessary and proper for the defendant railway company to have furnished a stool or step or platform for the plaintiff to have alighted from its train with safety, then it was the duty of this company to have furnished such appliance, and it was its duty further to see that the same was properly and safely placed; and if you find from the evidence that plaintiff was injured, as alleged, and you further find that the defendant railway company failed and neglected to furnish such stool or platform, and that such neglect and failure was the proximate cause of the injury, and that plaintiff was not guilty of negligence on his part which contributed to such injury, then the said defendants would be liable for the injuries, and your verdict should be for the plaintiff."

Defendants' counsel saved an exception to this part of the charge and contend that the lack of the use of the stepping-box obviously had no connection with the accident and that the giving of such instruction was reversible error. It is quite likely that if the trial court had had an opportunity to review and analyze all the testimony the charge in this respect would have been different, and it seems that the matter of the use of the stool was remote. After a careful reading of all the evidence which is contained in the record we are forced to the conclusion that the instruction, although it be inapplicable, did not change the result of the case and was not reversible error. Under the mandate of our Constitution, Article VII, Section 3, the verdict should not be disturbed.

8. The following part of the charge is criticised:

"If the defendant Burgess knew or could have known by the exercise of reasonable care that the plaintiff was in such dangerous situation, considering his age, experience, and understanding that then it

was their duty to slow up the train sufficiently to permit the plaintiff to leave the same in safety, if the same were in motion, and if the train had not been started, not to start the train until the plaintiff had gotten to a place of safety."

The rule with respect to the duty owing persons of advanced age or under disability is that they should be given such assistance as their appearance reasonably indicates is necessary; and the train employee is bound to consider only such facts with respect to the passenger's condition as are within his knowledge, or are made known to him through the passenger's appearance, or otherwise: 2 Shearman & Redfield on Negligence (5 ed.), § 510. The instruction obviously related to the apparent familiarity and ability of the plaintiff in connection with his position on the car when he found it suddenly put in motion, and we see no reason for the same to be misunderstood by the jury. There was no error in giving it.

A consideration of the entire charge of the court to the jury convinces us that the issues were plainly and fairly submitted to it.

9, 10. The main question in this case is one of fact which the jury under its prerogative has passed upon. The amount of damages that should be awarded when the liability has been established is especially for its determination. The range of its power, within the limits imposed by the evidence, is very large. We cannot review the testimony for the purpose of substituting our judgment for the decision of the jury upon this issue of fact as to the damages to be allowed. We cannot by any means say there was no evidence to support the finding of the jury in this respect. The evidence of plaintiff shows that defendant Chamberlain was not present when the accident happened and did not know when the train started that plaintiff

was not off the train in safety.  We find no evidence tending to show that it was the duty of defendant Chamberlain to be at the car where the plaintiff and other passengers were to alight or to assist the plaintiff to make his exit or that the conductor was responsible for the acts of the brakeman Mr. Burgess.  He appeared to be there for the purpose of assisting the passengers and he testified that it was his duty to discharge and receive passengers at the stations and to see that they got off the train.  There was no contradiction of such evidence.  It appears that at the time defendant Chamberlain was near where the baggage was being discharged at the station mentioned attending to his duties.  In fact but little, if any, attention was paid to the responsibility of this defendant during the trial.  We find no evidence to support the verdict against the defendant Chamberlain. The judgment against him should be reversed and it is so ordered.  With this exception we find no reversible error in the record and the judgment of the lower court in other respects is affirmed.

AFFIRMED, EXCEPT AS TO DEFENDANT CHAMBERLAIN.

MCBRIDE, C. J., and HARRIS, J., concur.

MR. JUSTICE MCCAMANT dissents.