Argued September 27, affirmed October 19, 1915.

# WILLIS v. HORTICULTURAL FIRE RELIEF.*

(152 Pac. 259.)

**Appeal and Error—Evidence—Motions to Strike—Necessity.**

1. Where an answer was not responsive to a question, the injured party must move to strike it, or the matter cannot be reviewed.

**Witnesses—Error in Evidence—Correction.**

2. Where a witness, in an action on a fire policy who had signed the proofs of loss, made a mistake either in his computations or his testimony, another witness may account for the mistake, if the first cannot be recalled.

[As to when concealment or misrepresentation avoids fire policy, see note in 35 Am. Rep. 629.]

**Witnesses—Examination—Scope.**

3. In an action on a fire policy, where the insured, who signed the proofs of loss, was, on cross-examination, asked if the adjuster called his attention to the fact he enumerated 81 iron bedsteads, and it appeared that there had been a mistake in computations, it is proper to allow the insured on redirect examination to testify that the adjuster did not suggest he refresh his memory as to the number of iron bedsteads destroyed by inspecting the ruins, even though it is not the duty of the adjuster to aid the insurer in making proofs of loss.

**Evidence—Opinion Evidence—Expert Testimony.**

4. An experienced furniture dealer who had inspected in a store a stock of furniture insured is competent to testify as to its value and that it was worth the amount of the policy, where the invoices were destroyed.

[As to when the opinions of nonexperts are admissible, see note in 30 Am. St. Rep. 38.]

**Insurance—Fire Policies—Actions—Evidence.**

5. In an action on a fire policy where it was contended that false statements in the proofs of loss avoided the policy and precluded recovery, the question whether the statements were intentionally false so as to prevent recovery *held*, under the evidence, for the jury.

**Insurance—Fire Policies—Proofs of Loss.**

6. Where a fire policy provided that any false statements or false swearing by the insured relating to the insurance or subject matter before or after loss should avoid the policy, unintentional false statements in the proofs of loss will not preclude recovery.

From Lake: HENRY L. BENSON, Judge.

---

*As to effect of false swearing in proofs of loss, see note in 32 L. R. A. (N. S.) 453.                                    REPORTER.

Department 1. Statement by MR. CHIEF JUSTICE MOORE.

This is an action by Richard Willis and E. R. Willis, partners as Willis Furniture Company, against the Horticultural Fire Relief of Oregon, to recover upon two insurance policies $6,000 for the loss of and the damage to a stock of furniture, etc., by fire which occurred at Lakeview, Oregon, February 5, 1912. The complaint is in the usual form, and alleges that all the insured property was totally destroyed, except five pieces of furniture of the value of $70, thereby entailing a loss of $7,200.

As special defenses the answer charges that the property involved was purposely burned by the plaintiffs, and that they made willfully false sworn statements in their proof of loss.

The reply converted the allegations of new matter in the answer, and the cause, being tried, resulted in a judgment for the plaintiffs in the sum stated, and the defendant appeals.    AFFIRMED.

For appellant there was a brief over the names of *Mr. John Bayne* and *Mr. L. F. Conn,* with an oral argument by *Mr. Bayne.*

For respondents there was a brief over the names of *Messrs. Thompson & Rutenic* and *Mr. Joseph S. Kent,* with oral arguments by *Mr. W. Lair Thompson* and *Mr. J. C. Rutenic.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. The plaintiff E. R. Willis testified that the plaintiff Richard Willis had some experience in the furniture business before forming the present partnership,

but that no purchases of stock had been made by him prior to their engaging in business at Lakeview, Oregon, and he was asked:

"At the time of your taking this inventory, December, 1911, did you note his ability to give prices or cost of articles?"

An objection to this inquiry having been overruled and an exception allowed, the witness answered:

"Well, he did not have any cost marks on the articles, but always stated that it cost about this, and about that, and he never knew how many of an article he had, or how much an article cost exactly, and that is the reason why I was anxious."

It is argued that, since Richard Willis subscribed his name and made affidavit to the proof of loss, wherein untrue statements were made as to the total destruction of the entire property when some articles of furniture were but slightly damaged, in which writing he willfully misrepresented the value of the stock burned, the question so objected to, when permitted to be answered, over exception, tended to show that, because he had no knowledge gained by observation, and for that reason was unable correctly to give the number of articles of furniture destroyed or to state the price thereof, his statement, though untrue, was, by reason of his inexperience, not willfully false. It will be noted that the answer which should have been given by E. R. Willis was "Yes" or "No." In overruling the objection to the inquiry, the court could not reasonably have anticipated that the reply would not have been responsive to the question. Under such circumstances, after the answer had been given, defendant's counsel should have moved to strike it out, but, not having done so, the error assigned is unavailing.

2. Any witness may possibly make a mistake in undertaking in court to detail the facts which he has perceived, but if he discovers the error or his attention is called to it before the trial is closed, and he' means to be honest he ought to correct the fault, and should be given an opportunity carefully to explain how it occurred, thus leaving the jury to determine whether or not the false statement was knowingly made. Another person who knows how such mistake arose should be permitted to account for it, if the witness who committed the error cannot be recalled. The court adopted this course, allowing the testimony of another witness to be given, and in doing so no error was committed.

At a former hearing of this cause in the lower court Richard Willis gave testimony which was transcribed, and, in the absence of that witness, received in evidence at the trial herein. If a motion had been made by defendant's counsel to exclude such part of that evidence as related to the values of goods destroyed by fire, on the ground that the witness was inexperienced, and by reason thereof unable to express an opinion on the subject, and had the supposed motion been denied, an exception taken and properly incorporated in the bill, the action of the court in that particular could have been reviewed. Since such supposed course of procedure was not pursued, it is unnecessary to consider the question discussed in the brief as to whether or not the senior partner was qualified by experience or observation to give an estimate of the worth of such goods.

3. From the transcript of Richard Willis' testimony it appears that on redirect examination, in referring

to the insurance adjuster, the plaintiffs' counsel inquired:

"At the time you gave this proof of loss and these affidavits, the making of these affidavits, Mr. Willis, or at any time, when the question of the number of bedsteads destroyed by fire come up, did Mr. Ratcliffe suggest to you that you could aid your memory by looking over the ruins and counting the iron bedsteads?"

An objection to this question was overruled and an exception allowed, whereupon the witness replied: "He did not, sir." It is contended by the defendant's counsel that it was not incumbent upon the insurance adjuster to aid the insured in preparing their evidence, and, this being so, the answer of the witness tends to impose upon the defendant's representative blame for the false statement in the proof of loss. Prior to the giving of the answer last objected to, defendant's counsel, on cross-examining this witness, asked:

"Is it not a fact Mr. Willis, at the time you gave this list, your attention was called to the fact that you had enumerated 81 iron bedsteads?"

He replied: "No, sir." From this question it would seem to be implied that, as Mr. Ratcliffe was present when the list of property burned was made out, he had suggested to Richard Willis a proper manner of determining the number of bedsteads destroyed by the fire. While it was not the duty of the adjuster, who was the defendant's agent, to aid the plaintiffs in making out their proof of loss, it was proper to permit the witness on redirect examination to testify as indicated, in order to refute any inference that might have been created in the minds of the jurors by the question asked on cross-examination.

77 Or.—40

The transcript referred to further shows that in alluding to a duplicate invoice of a stock of goods belonging to a decedent's estate Richard Willis was asked by his counsel:

"Was your attention called by the insurance adjuster to the existence of this copy?"

An objection to the inquiry having been overruled and an exception allowed, the witness answered:

"There was a copy. It may possibly been one that the administrator used when Mr. Colvin died. He had a few accounts, but I bought them out, and in a book in the drawer, which I quite frequently come across, and it made plain there was an inventory of the stock, but it might have been as to the administration after Mr. Colvin's death. They made an inventory, and that was in the drawer there, or one of them."

It will be seen that this reply was not responsive to the question, and, as no motion was made to strike out the answer, the alleged error is not properly raised.

4. William Wallace, as plaintiffs' witness, testified that for about three years prior to the trial herein he had theretofore been a furniture dealer at Lakeview, Oregon, and that during the time the plaintiffs were engaged in such business in that city he had called at their store several times, the last occasion being about a week before the fire, and, referring to the stock then seen in the building, he said: "I would have taken it at a lump at $6,000." It further appears from the testimony of this witness that he sold his furniture business to a Mr. Chandler, who transferred it to a Mr. Colvin, and the latter having died, an administrator of the decedent's estate sold the stock to the plaintiffs. Mr. Wallace was then asked: "Now, what was the value of the goods you sold to Chandler?"

Over objection and exception, he replied: "It was forty-two hundred and some dollars, was the invoice of my stock." This witness, in answer to the inquiry as to how the stock of goods which he sold to Chandler compared with the plaintiffs' supply of furniture, etc., testified, over objections and exception, that he thought their stock was greater.

It is maintained that errors were committed in receiving such testimony. The experience of Mr. Wallace as a furniture dealer was undoubtedly sufficient, after an inspection of the stock, to enable him to express an intelligent opinion as to its value. Unpacked furniture offered for sale is not like the class of goods that are kept on shelves in boxes, no fair estimate of the value of which can be made without careful inspection. A dealer in household goods who knows the general invoice prices thereof is competent, from an inspection of the stock displayed, to estimate its value. When a witness has some knowledge on which to base an opinion as to the value of property, his testimony is competent; the weight to be given to it being a question for the jury: Elliott, Ev., § 685; *Ruckman* v. *Imbler Lumber Co.,* 42 Or. 231 (70 Pac. 811); *Brown* v. *Truax,* 58 Or. 572 (115 Pac. 597); *Tucker* v. *Colonial Fire Ins. Co.,* 58 W. Va. 30 (51 S. E. 86).

It was incumbent upon the plaintiffs to offer the best evidence they could produce, and, since their bills and invoices of goods were burned it was competent for them to introduce testimony tending to show the extent and worth of another stock of furniture, a comparison of which with the magnitude of the property destroyed by fire might enable the jury to estimate the measure of loss. No error was committed in this respect.

5. A clause in the contracts of insurance involved in the case at bar reads:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material facts or circumstances concerning this insurance or the subject thereof, or if the interests of the insured be not truly stated herein, or in case of any fraud or false swearing by the insured touching any matter relating to this insurance, or the subject thereof, whether before or after a loss."

The answer alleges that in making out the written proofs of loss, which were verified by the plaintiff Richard Willis, he falsely stated that the property insured was totally destroyed by fire, when five pieces of furniture were saved; that he knowingly declared upon oath the number of iron and brass bedsteads destroyed to be 81, when there were only 32 such pieces in the building when it was burned; and that he also stated in the same manner the value of the property lost was $9,168.97, when as a witness at the trial he admitted that the worth of the goods destroyed was only $7,223. The defendant's counsel, having introduced evidence in support of these issues, moved the court for a directed verdict in favor of his client, but, the motion having been denied, it is insisted that an error was thereby committed.

The evidence shows that ten days after the fire, and before the proofs of loss were made out, Miss Laura Duke, a stenographer, took in shorthand the oral statements of Richard Willis as to the amount of the property destroyed. These notes having been extended the next day, a sentence in the transcript thereof reads:

"I saved one or two pieces of furniture that were burned afterward."

This plaintiff as a witness, referring to a part of the sentence "that were burned afterward," testified as follows:

"I would say about that, that it was either taken down wrong, or a mistake."

In answer to the question, "Are you certain that you gave those pieces that were saved before you made your proof of loss?" this witness, alluding to a conversation he had with the insurance adjuster relating to the property which escaped the fire, replied:

"I told him of the articles saved, and asked him what I was to do with them.   He said I claimed my loss was greater than the insurance, and I could do what I pleased with them."

At the trial the complaint, by leave of court, was amended so as to state the articles of furniture thus saved, but in a damaged condition, and to give the value thereof.

Mrs. Laura Hickerson, née Duke, as plaintiffs' witness, testified that she could not produce her stenographic notes of the declarations made in her hearing by Richard Willis, because she had delivered them to the insurance adjuster.   In referring to her ability correctly to read the notes at the time they were made, she stated upon oath that she could not properly transcribe the memoranda, because she had not done any work of that kind for two years prior thereto, and that in copying the notes she had difficulty, and put in the transcript whatever words she thought should be included.

The proof states a destruction of property value at $9,168.97, while Richard Willis testified that the worth of such property was only $7,223.   In explaining this discrepancy he stated upon oath that immedi-

ately after the fire he informed the insurance adjuster, and at all times thereafter declared to him, that the value of the property burned was $7,223, as disclosed by an inventory of the stock of goods, taken a few weeks prior to the fire. This plaintiff further deposed that from memory he was unable to give a list of the articles destroyed, and that, to the best of his recollection, the larger sum appended to the schedule of property was written after he had subscribed his name thereto.

The proof of loss declares that 81 bedsteads valued at $451 were burned, though Richard Willis testified that at the time of the fire there were not so many in the building, the worth of that class of property being only $227; that he arrived at such figures by adding to the worth of the bedsteads given in the inventory the value of like property received after such schedule was made and deducting from that sum the worth of bedsteads sold, thus leaving $227 as the value at the time of the fire, which estimate he gave to the adjuster, who desired a detailed list of the different kinds of such property and their respective values, in compliance with which three grades of bedsteads were given and the worth thereof, but in making up the proof of loss, the numbers and values of the classes last given were inadvertently added to the original estimate as made.

The foregoing statement on this branch of the case is deemed to be a fair epitome of the testimony given by the plaintiffs in explanation of the inconsistencies referred to. From such showing it is believed the questions involved were not so free from doubt that the court could say, as a matter of law, that no recovery could be had on the policies by reason of the alleged

false statements, and that in submitting the entire matter to the jury for their determination no error was committed.

6. The court in its charge referred to the clause of the policies whereby the contract of insurance was to be rendered invalid by misrepresentation on the part of the plaintiffs of any material facts concerning the insurance or the subject thereof, and said:

"The untrue statement, in order to avoid the policy, must have been knowingly and intentionally made by the insured, with knowledge of its falsity."

An exception having been taken by defendant's counsel to the language quoted, it is contended that an error was committed in thus instructing the jury.

"Mere falsity of a sworn statement," says an author, "is not sufficient to avoid the policy, if not made with intent to defraud; the false swearing which voids the insurance must be done willfully and knowingly and with intent to defraud the company": 1 Clement, Fire Ins., 275.

In *Claflin* v. *Commonwealth Ins. Co.*, 110 U. S. 81, 95 (28 L. Ed. 76, 3 Sup. Ct. Rep. 507, 515), Mr. Justice MATTHEWS in discussing this subject remarks:

"A false answer as to any matter of fact material to the inquiry, knowingly and willfully made, with intent to deceive the insurer, would be fraudulent: If it accomplished its result, it would be fraud effected; if it failed, it would be a fraud attempted. And if the matter were material and the statement false, to the knowledge of the party making it, and willfully made, the intention to deceive the insurer would be necessarily implied, for the law presumes every man to intend the natural consequences of his acts."

In a former trial of this cause Mr. Justice EAKIN, speaking on this question, says:

"We leave out of account any consideration of false swearing in ignorance of the facts or by mistake which would not avoid the policy": *Willis* v. *Horticultural Fire Relief,* 69 Or. 293, 299 (137 Pac. 761, Ann. Cas. 1916A, 449).

To the same effect, see *Ward* v. *Queen City Ins. Co.,* 69 Or. 347, 351, (138 Pac. 1067); *Parker* v. *Amazon Ins. Co.,* 34 Wis. 363, 371; *Waldeck* v. *Springfield F. & M. Ins. Co.,* 53 Wis. 129, 131 (10 N. W. 88).

If the plaintiffs erroneously stated in their proof of loss certain facts as to the quantity or value of the property destroyed, without any fraudulent intent to defraud the defendant, they were properly permitted to explain, at the trial, how the mistake occurred in order that the jury might determine whether or not a dishonest motive might reasonably have been inferred from their written false declaration. The instruction complained of was proper, and no error was committed in giving it.

An exception was taken to the following instruction:

"If you find from the evidence in this case that the plaintiffs made an erroneous proof of loss to defendant, but that the errors therein were not made intentionally, and you do not find that the plaintiffs set the fire that caused the loss, or procured the same to be done, then you must render a verdict for the plaintiffs."

The language here complained of is so nearly consonant with the part of the charge already considered that a discussion thereof is not deemed necessary.

Exceptions were taken to other instructions that were given and to the refusal of the court to charge as requested. These matters have been carefully examined and are deemed unimportant.

It follows that the judgment should be affirmed, and it is so ordered.                              · AFFIRMED.

MR. JUSTICE BEAN, MR. JUSTICE BURNETT and MR. JUSTICE McBRIDE concur.