Argued at Pendleton May 6, affirmed June 4, 1918.

# BOYD v. GROVE.

## (173 Pac. 310.)

**Animals—Trespass—Damages—Nominal Damages.**

1. Where plaintiff alleged trespass by 700 of defendant's sheep, and defendants denied, except that 80 sheep got away from the herder and trespassed, but were immediately removed, plaintiff was entitled to at least nominal damages; the trespass being admitted.

**Pleading—Reply to Qualified Denial.**

2. In trespass, where defendant set up qualified denial, plaintiff was not required to reply.

**Trial—Instructions—Questions of Law.**

3. In trespass instruction that plaintiff should minimize his damages, and that the jury could consider all circumstances in evidence in determining whether it was plaintiff's duty to act on the issue of damages, was not objectionable as submitting to the jury a question of law.

**Damages—Reduction of Loss.**

4. The duty of a party injured by the trespass of another is to exercise the diligence of an ordinarily prudent man to minimize the damages.

**Trial—Instructions—Requests.**

5. In trespass instruction that plaintiff should minimize his damages, and that the jury could consider all circumstances in evidence in determining whether it was plaintiff's duty to act on the issue of damages, was good, as far as it went, and in the absence of a request stating the law more specifically, defendants are not entitled to complain on this ground.

**Animals—Evidence—Damages by Animals—Admissibility of Evidence—Opinion.**

6. In action for damages to grass by trespass of sheep, it was pertinent to prove that the supply of feed was limited, and to take the opinion of a qualified witness as to the value of the grass consumed.

> [As to liability of owners for damage by trespassing animals, see note in 28 Am. Rep. 569.]

**Animals—Trespass—Pleading and Proof.**

7. Where complaint for trespass alleged usefulness of plaintiff's property for grazing, and that, if overstocked, the grass roots are killed out, and the land permanently injured, and that the trespass so injured the land, there was sufficient foundation for testimony of value of land before and after the trespass.

**Evidence—Opinion Evidence—Examination of Witness.**

8. In action for trespass and permanent injury to land, while witness could not testify categorically as to *quantum* of damages, he could prove value before and after the trespass by testimony directly stating the difference in value.

**Appeal and Error—Harmless Error—Instructions.**

9. In trespass, where one element of damage was expense of cleaning irrigation ditch amounting to two days' wages of one man, error, if any, in instructing thereon was harmless, since *"de minimis non curat lex."*

**Evidence—Opinion Evidence—Weight.**

10. In trespass for damages to grass, and permanent injury to land, instruction that jury was not bound by opinion of witnesses as to *quantum* of damage, but that the same could be considered with other evidence, was proper.

**Evidence—Improper Evidence—Counter Evidence.**

11. In trespass, while defendant's testimony as to their attempt to compromise should not have been admitted, plaintiff was, after its admission, entitled to give his version of the conversation.

**Trial—Rebuttal Evidence—Scope—Motion to Strike.**

12. In trespass, where defendants gave their version of a conversation with plaintiff in which they sought to compromise, plaintiff's rebuttal, giving his version, should have been limited to testimony bearing on that before given; but improper details need not be stricken without proper motion.

**Evidence—Improper Evidence—Counter Evidence.**

13. In action for trespass, where one defendant improperly detailed his version of conversation, offering compromise, which plaintiff disputed, adding a statement attributed to another defendant, proof that such other made no such statement was properly excluded.

From Harney: Dalton Biggs, Judge.

In Banc.

This is an action brought to recover damages for trespasses on plaintiff's lands by defendants' sheep. The trespasses are alleged to have taken place April 12, 1917, and May 3, 1917. Plaintiff alleges that the sheep ate the grasses growing on his lands and tramped out the roots.

The jury found for plaintiff in the sum of $300 and defendants appeal from a judgment on this verdict.

Affirmed.

For appellants there was a brief with oral arguments by *Mr. P. J. Gallagher* and *Mr. William H. Brooke.*

For respondent there was a brief with oral argument by *Mr. Charles W. Ellis.*

McCAMANT, J.—1. Error is assigned on the instruction given that plaintiff was entitled to at least nominal damages. The fifth paragraph in the first count of the complaint is as follows:

"That on or about the 12th day of April, 1917, the defendants wrongfully, unlawfully, and without the plaintiff's consent, and against his will, herded, grazed, and pastured a band of approximately 700 of their sheep on the said land, they well knowing that the land belonged to the plaintiff and that the plaintiff would not permit trespassing thereon, and whereby on account of the said acts of the defendants the pasture for the said lands was injured for the year 1917 and the roots of the grasses growing thereon in many places permanently injured; that a part of the said land was fenced."

The corresponding portion of the answer is as follows:

"[Defendants] deny that on April 12th, 1917, or at any other time approximately 700 or any other number of their sheep were herded, grazed or pastured on said land and allege that on said date about 80 sheep got away from their herder and entered the said land, but were immediately taken out by the said herder."

2. Defendants clearly admit a trespass and it is elementary that a party guilty of trespass must pay at least nominal damages. The portion of the answer above quoted is a qualified denial; for this reason and

also because it is not specially pleaded, plaintiff was
not required to reply.

Defendants contended that by the exercise of rea-
sonable diligence at the time of the first trespass plain-
tiff could have driven the sheep off his premises and
thus minimized the damages. In response to this con-
tention the court instructed the jury as follows:

"It is also the duty of a person seeing himself dam-
aged or about to be damaged, to use reasonable efforts
to prevent or minimize those damages; and therefore
you may consider all of the circumstances detailed to
you in evidence in this case in determining whether,
under the peculiar circumstances of this case, it was
the duty of this plaintiff to take any action in the
premises, to minimize or reduce his damages; and you
may consider this in determining the damages to
which you may think the plaintiff is entitled in this
case, if any."

3–5. Defendants claim that this instruction is erro-
neous as passing a question of law up to the jury. We
do not think that the instruction is open to this criticism.
The duty of a party injured by the tort of another is
to exercise the diligence of an ordinarily prudent man
to minimize the damages: *American Smelting & Refin-
ing Co.* v. *Riverside Dairy*, 236 Fed. 510, 514 (149
C. C. A. 562). If under the testimony only one infer-
ence can be drawn as to the plaintiff's duty, the ques-
tion is one of law for the court. Otherwise the ques-
tion is for the jury: *Richmond* v. *McNeill*, 31 Or. 342,
352, 353 (49 Pac. 879). We cannot say as a matter of
law that plaintiff failed to exercise the diligence of a
reasonably prudent man in the respect pointed out and
the court did not err therefore in leaving the question
with the jury. The instruction given was good as far
as it went. In the absence of a request stating the
law more specifically, defendants are not entitled to

complain on this ground: *Kincart* v. *Shambrook,* 64 Or. 27, 32 (128 Pac. 1003).

Defendants invoke the principle that special damages cannot be recovered unless a foundation for such recovery is laid in the pleadings. It is contended that this principle was violated in the admission of testimony. After proof had been received of the trespasses alleged in the complaint, the court received evidence over defendants' objection and exception that at the time in question the feed was about all gone in the part of Harney County in which plaintiff lived. Thereupon over objection and exception the following question was answered:

"What would be the market value of that feed [the grass consumed by the sheep] in that community at that time, under those circumstances, for the purpose of saving stock, as you have told here?"

The first answer was:

"That grass would be worth $300 to $400 to anybody with poor stock."

This answer was stricken out and the witness thereupon said that the feed would be worth $300 to $400.

6. We do not think that the testimony so received and other testimony to the same purport were open to the objection urged. Market value is usually dependent on demand and supply. It was therefore pertinent to prove that the supply of feed was limited and to take the opinion of a qualified witness as to the value of the grass consumed by defendants' sheep: *Pacific Livestock Co.* v. *Murray,* 45 Or. 103, 109 (76 Pac. 1079). That this testimony tends to prove general as distinguished from special damages is taught by *Wheeler* v. *O'Brien Brothers* (Nev.), 165 Pac. 339.

7. Defendants also contend that no foundation was laid in the pleadings for testimony as to the injury to

plaintiff's freehold. The complaint alleges the use-
fulness of plaintiff's property for grazing purposes
and that if it is overstocked the roots of the grasses
are tramped out and the land is permanently injured.
It is then charged that the land was so injured by the
trespasses complained of. We think that the plead-
ings lay a foundation for plaintiff's testimony on this
subject.

8. After testimony to the value of the grass con-
sumed by defendants' sheep, plaintiff testified that
there was more or less permanent injury to his prop-
erty as the result of the trespasses. Thereupon over
defendants' objection and exception he was permitted
to answer the following question:

"How much less, if any, was the market value of
your premises immediately after the sheep had tres-
passed upon it as you have related, than they were
immediately prior to the time the sheep trespassed?"

The answer was $600 or $700. It is well settled in
this jurisdiction that a witness cannot testify categori-
cally as to the quantum of damages sustained by a
plaintiff through the acts complained of: *Montgomery*
v. *Somers,* 50 Or. 259, 262 (90 Pac. 674); *Pacific Ry.
& Nav. Co.* v. *Elmore Packing Co.,* 60 Or. 534, 538,
(120 Pac. 389, Ann. Cas. 1914A, 371). But the fore-
going testimony does not come within the above rule.
It was competent for plaintiff to prove by the opinion
evidence of a qualified witness the value of his prop-
erty before the trespass and also to prove its value
after the trespass by the same character of tes-
timony: *Blagen* v. *Thompson,* 23 Or. 239, 259 (31
Pac. 647, 18 L. R. A. 315); *Ruckman* v. *Imbler
Lumber Co.,* 42 Or. 231, 233 (70 Pac. 811); *Willis*
v. *Horticultural Fire Relief,* 77 Or. 621, 627 (152
Pac. 259). This being well settled, it would seem
very technical to exclude testimony to the same

end which is distinguishable only in that the witness subtracts the one sum from the other and testifies to the remainder. That such testimony may be received without error is the doctrine of *Portland* v. *Kamm,* 10 Or. 383, 384, 385; *Blagen* v. *Thompson,* 23 Or. 239, 259–261 (31 Pac. 647, 18 L. R. A. 315), and *Portland* v. *Tigard,* 64 Or. 404, 405, 406 (129 Pac. 755, 130 Pac. 982).

9. A part of plaintiff's damages consisted in the blocking of his irrigation ditch by debris which rolled therein as a result of the trespasses. Defendants cite *Clark Lloyd Lumber Co.* v. *Puget Sound C. R. Co.,* 92 Wash. 601 (159 Pac. 774), to the effect that the measure of damages in such case is the expense of removing the debris. The testimony of plaintiff is that it took one man two days to clean out this ditch. This was an unimportant element in plaintiff's damage and the error, if any, in instructing as to the measure of damages could not have appreciably affected the verdict. *De minimis non curat lex.*

10. The two material elements of damage relied on are the value of the grass consumed and the permanent injury to the property arising by tramping out the roots of the vegetation. The following instruction on the measure of damages was substantially right and is approved:

"There has been some testimony in this case by way of opinion of witnesses, as to the value of the pasture destroyed, and as to the depreciation in the value of the land by reason of the acts of the defendants' sheep. You are not bound in this case to be governed by the opinion of any man as to the value of this pasture, or as to the depreciation in value of the freehold. You may consider that evidence, however, along with other evidence, in determining for yourself what the market value of the pasture destroyed was, and also what the depreciation, if any, was in the freehold."

Over plaintiff's objection defendants offered evidence of a conversation between plaintiff and the defendant Garcia in which the latter offered to pay whatever damage plaintiff had sustained and in which plaintiff said he would leave the damages to a jury. On rebuttal plaintiff testified on this subject as follows:

"The conversation was that Joe Garcia came up the road and met me and Mr. Al Wallace talking. I told him, I says, 'There has been some of your sheep down in my field,' I says, 'also they have been in my wife's field. Did she say anything to you about it?' He says, 'Yes, I was just talking to her.' I says, 'The sheep came on down into my field the other day, too.' I says, 'Harrison Grove is telling about—as I understand, he was going about—.' "

At this point counsel for defendants said:

"We object to this as incompetent, irrelevant, and immaterial, and making a self-serving declaration."

The objection was overruled, an exception allowed and thereupon the witness continued as follows:

"I says, 'Bob Miller and others told me Harrison Grove made the remark at Trout Creek, he was going to come to Cottonwood Creek and eat the Cottonwood people's dooryards out.' He said before other people, he was coming to Cottonwood and eat them Cottonwood people's dooryards out. Garcia says, 'He ain't got nothing to do with the sheep; he couldn't have said it. I am running these sheep,' and he says, 'If they have done any damage,' he says, 'why,' he says, 'It is up to me.' I says, 'Who would you leave it to—you or me? I wouldn't ask you to leave it to me and I wouldn't leave it to you.' I says, 'Leave it to a disinterested party, or to a jury to settle this matter.' And he drove off."

At one point the witness was interrupted in making the above answer, by an objection preferred by de-

fendants. No exception was reserved to the ruling of the court on this objection.

11, 12. The testimony offered by defendants tended merely to show an attempt on their part to compromise or adjust the controversy. This testimony should not have been received, but after it was received plaintiff was entitled to give his version of the conversation: Jones on Evidence (2 ed.), § 172; *Bogk* v. *Gassert,* 149 U. S. 17, 24, 25 (37 L. Ed. 631, 13 Sup. Ct. Rep. 738). It is true that the only portion of the conversation which was receivable under this rule is that portion of it which bore on the same subject and was explanatory of the part first testified to: 3 Wigmore on Evidence, 2113; Jones on Evidence (2 ed.), §§ 822 and 873; *Commonwealth* v. *Keyes,* 11 Gray (77 Mass.), 323, 325; *Garey* v. *Nicholson,* 24 Wend. (N. Y.) 350, 353, 354; *Atherton* v. *Defreeze,* 129 Mich. 364 (88 N. W. 886). If, therefore, defendants had moved to strike out so much of plaintiff's testimony as related to what Miller and others had told him, the motion should have been allowed. No such motion was made. If requested so to do by defendants, the court should have cautioned the witness to state only so much of the conversation as related to the trespass and the payment of damages therefor. No such request was made. Defendants' objections went to the detailing by plaintiff of his version of the conversation; these objections were not well taken.

13. Defendants offered to prove that Harrison Grove had not made the remark attributed to him by plaintiff's testimony as to what Miller and others had said, but no error was committed in excluding this testimony. Both parties had given their versions of a conversation which was itself immaterial. The trial would have been carried far afield by the investiga-

tion of the truth of hearsay statements quoted by one of the parties thereto.

We find no substantial error and the judgment is affirmed. ·                    ·         Affirmed.